JOHN H. COOPER v. JOSEPHINE HAMILL COOPER
(Alias J. H. Cooper)

163 So. 35.

Division: B.

Opinion Filed July 25, 1935.

Petition for Rehearing Denied September 16, 1935.

*J. W. Salisbury, and Beacham & Gaulden,* for Appellant; *Albert C. Fordham,* for Appellee.

BUFORD, J.—The appeal here is from final decree dismissing a counter claim filed by defendant in a proceeding instituted by the complainant for divorce.

The wife sued the husband for divorce on the ground of continuous extreme cruelty. The counter claim alleges in substance that the complainant was divorced from her former husband, one Leon Blatchford, by decree of March 12, 1932; that on March 15, 1932, "the complainant drove to Palm Beach from the City of Miami, Florida, her home, protesting her love for this defendant, stating that she had loved him devotedly since their first meeting in California and prevailing on this defendant to immediately secure a license and get married, and that notwithstanding the fact that this defendant implored her to think it over a few months before taking such a step, she insisted and persuaded this defendant to immediately take the fatal step through her tears and hysteria."

It is further alleged that immediately after the marriage ceremony in Stuart, Florida, the complainant retuned to Miami and lived at the Columbus Hotel under the name of Mrs. Leon Blatchford; that she has never accepted the name of defendant, nor has she ever lived with the defendant as his wife; that the next day after she returned to Miami she repeatedly called defendant over long distance telephone and stated that although she loved him dearly, it would be impossible for her to live with him at that time because she was upset and worried over what action her former husband might take against them and begged him to immediately get his affairs in shape that he could not harm him in a financial way. After a few weeks complainant called defendant over long distance and advised that they must immediately leave for New York and have a transfer of all stocks held by the defendant made to the

complainant; that her former husband was then on the way from California to institute suit against defendant for the alienation of his wife's affections and the only hope of preventing such action was to transfer all his property to the complainant; that she had paid her former husband Thirty Thousand Dollars as settlement in a divorce matter and that he would not attempt to harm her financially or otherwise. That the next day complainant came to Palm Beach, purchased two tickets to New York from Palm Beach with her funds and prevailed upon defendant to leave with her and go to New York and have the transfer agent transfer all stocks which he owned to her name.

It is further alleged that the defendant, having confidence in the woman he had married, and relying implicitly upon her representation that her former husband intended to ruin him financially the defendant went with complainant to the National City Bank in New York and there procured and transferred certain certificates of common stock of General Motors Corporation and a certain certificate of stock of General Aviation Corporation to complainant. That at the time the stocks were transferred the defendant, in the presence of an officer of the bank prepared in his own handwriting a letter stating that the transfer of the stocks was temporary and that the complainant was to re-transfer same upon demand. That thereupon complainant stated that such writing was unnecessary; that she would leave all the stocks in safekeeping with the officer of the bank and that defendant could obtain them at any time. That defendant, relying upon this representation, destroyed the paper writing which he had asked the complainant to sign and on the same day both parties returned to Palm Beach, Florida; that at all times complainant refused to allow de-

fendant the privileges of a husband and returned immediately to Miami, Florida, where she continued to live at the Columbus Hotel under the name of Mrs. Leon Blatchford, though she promised to return in a few days to Palm Beach for the purpose of leaving with defendant on a honeymoon. That a few days after their return from New York the complainant, without the knowledge of defendant, returned to New York and obtained from the officer of the bank the stock certificates which had been left with the bank for safekeeping and deposited them in a safety deposit box, all unknown to defendant, and again returned to Miami, Florida. That shortly afterwards she admitted to defendant that she had been to New York but claimed it was solely for the purpose of financing a gold mine which she owned in Cuba; that several days thereafter defendant received a telephone call from complainant from Jacksonville, Florida, informing him that she was leaving for Arizona in order to take a little time to decide whether or not she really loved the defendant; that she would write him daily telling him when and where to meet her. The defendant demurred and objected to her leaving and asked her to come back and be a wife to him, to which she answered she needed a few months to think the matter over. That thereafter defendant heard nothing further from complainant until he was served with summons in this suit about one week after her departure.

It is alleged that there was no consideration whatever for the transfer of the stock; that it was understood between the parties that the stock was to be held for the defendant by the complainant until such time as he should ask the return of same to him. That at the time of the representations made and the things hereinbefore set forth occurred Leon Blatchford was in the State of California

and had no intention of filing suit against defendant, or any other person, for the alienation of complainant's affection. That the complainant falsely and fraudulently made such representations with the intention of deceiving him and with the purpose of obtaining the transfer of all stock above referred to and that the stock was obtained by complainant through fraud, duress and imposition.

It was further alleged that the sole purpose of the complainant in obtaining said stock was to enable the complainant to falsely and fraudulently secure the property of defendant with a scheme or plan in mind of divorcing him immediately after such transfer and that the marriage was entered into by the complainant with such scheme or plan in mind.

The prayer is:

"1. That the said complainant be required and commanded by decree of this Court to transfer to this defendant all of the stocks above enumerated secured by the complainant from said defendant as hereinabove set forth, or in default thereof that a money decree be entered against said complainant in this cause.

"2. That this defendant be hence dismissed with his reasonable costs most wrongfully sustained."

The record disclosed that a conscienceless, scheming adventuress, taking advantage of the misplaced confidence and good opinion of a male acquaintance who was in position to contract the obligations of matrimony, procured a decree of divorce from her husband and immediately inveigled the aforementioned gullible and credulous male acquaintance into entering into a marriage ceremony with her with the sole intent and purpose on her part of defrauding him out of his property and converting the same to her own use and with no intention of consummating the marriage contract.

That she immediately carried into execution her scheme by deceiving the man whom she pretended to marry and by such deception procuring from him what appeared to be an assignment of valuable stocks which stocks were assigned to her for the sole purpose of placing them beyond the reach of her former husband, who, she represented, was about to bring suit against him for the alienation of her affection. That at the time the transfer was made it was not made as a gift but was made with the distinct understanding that the stock should be returned to him and that he should be reinvested with the title to the same as soon as he considered it safe to have the stocks returned to him. That the stocks were placed in possession of an officer of a bank with the understanding that they were to be held by that officer until such time as the *parties* should call for them. That the woman, without the knowledge or consent of the man returned to the bank and procured possession of the stocks and soon thereafter left the State of Florida for the western part of the United States.

Under this state of facts, it is apparent that the marriage ceremony was conceived and perpetrated in fraud; that the marriage contract was never consummated by cohabitation between the parties and that the woman never intended to consummate the marriage but at all times intended to use the marriage ceremony as a means by which to defraud the man out of his property and the value thereof. That the victim of this fraud did not suspect the real intention of the woman until she had procured his property and left the State.

The record sustains the finding of the Chancellor that the complainant in the suit below was not entitled to decree of divorce and his decree against her in that regard was without error.

Paragraph 2 of Section 35, 1931 Chancery Practice Act, provides:

"If the answer contains a counterclaim, appropriate special relief shall be expressly prayed in respect to the counterclaim, otherwise the answer shall be regarded as defensive only; but such prayer for special relief shall also be held to include any relief grantable under a prayer for general relief."

Therefore, the defendant, under his counterclaim which included prayers for special relief, was entitled to any relief which could have been granted under a prayer for general relief.

Under the allegations and proof the defendant was entitled to the relief prayed and was entitled in addition thereto to a decree annulling the alleged and pretended marriage because of the fraud perpetrated by the complainant in procuring defendant to agree to enter into the marriage contract with her. It is well settled that a party who has been the victim of a marriage ceremony procured by fraud and deception of the other party and where such marriage has not been consummated by cohabitation, may maintain suit and procure decree of annulment of such marriage. Provided, of course, such action is taken by such party before any condonation of the fraud and any affirmance of the marriage has occurred on the part of such victim. See R. C. L., page 446, Section 76; 38 C. J. 1304, Section 69; Farley v. Farley, 94 Ala. 501, 10 Sou. 646; Tompperts v. Tompperts, 13 Bush (Ky. 326), 26 Am. Rep. 197; Batty v. Green, 206 Mass. 561, 92 N. E. 715; Jones v. Jones, decided May 21, 1935 at present term.

In Tyson v. State, 83 Fla. 7, 90 Sou. 62, we said:

"The general rule supported by the great weight of authority and which we regard as sound in principle, is to

the effect that a marriage procured by fraud or while one of the parties thereto is actually under legal duress is voidable only, and therefore valid and binding upon the parties until annulled by a court of competent jurisdiction."

In that case we cited: "18 R. C. L. p. 446; Hawkins v. Hawkins, 142 Ala. 571, 38 South. 640; 110 Am. St. Rep. 53; Taylor v. White, 160 N. C. 38, 75 S. E. 941, L. R. A. 1916C, 704, 706, See also Garner v. State, 9 Ala. App. 60, 64 South. 183."

See also Miller v. Miller, 175 Cal. 797, 167 Pac. 394, from which we quote:

"In a wife's suit for maintenance, the husband's cross complainant for annulment on the ground that the wife had entered the marriage relation with the intention of refusing him sexual intercourse alleged that, owing to the wife's persistent refusal, the parties had never had marital intercourse after the marriage, and that within a reasonable time the husband notified the wife that their relations were terminated, etc., while according to the allegations of the wife's' complaint, the husband forthwith wilfully failed to provide the wife with the common necessaries of life or any money. *Held,* that the cross complaint sufficiently negatived the exception of Civil Code No. 82, subd. 4, providing that a marriage may be annulled, when the consent of either party was obtained by fraud 'unless such party afterwards with full knowledge of the facts constituting the fraud freely cohabited with the other as husband and wife.' "

See also Robert v. Robert, 87 Misc. 629, 150 N. Y. St. 366.

In Moore v. Moore, 94 Misc. 370, 157 N. Y. Sup. 819, it was held: "Where a man goes through a marriage ceremony with a woman, thereby representing his intention and purpose to fulfill the obligations of a husband to her, but in-

tending at that time to abscond and abandon her, he is guilty of fraudulent misrepresentations, which entitle her to an annulment of the marriage.

"Marriage is a civil contract which will be annulled by the court where the consent of a party to it has been procured by fraud or misrepresentation of a material fact, especially where the marriage was never consummated. Misrepresentations of purpose and intention, which constitute a material fact inducing another to act, are fraudulent misrepresentations, invalidating a contract induced thereby."

See also Anders v. Anders, 224 Mass. 438, 113 N. E. 203.

For the reasons stated, the decree appealed from is reversed with directions that the court enter a decree not inconsistent with the views herein expressed and that the costs be taxed against the complainant in the court below.

It is so ordered.

Reversed.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.