46 So.2d 602 (1950)
RUBENSTEIN
v.
RUBENSTEIN.
Supreme Court of Florida, Division A.
May 26, 1950.
Rehearing Denied June 20, 1950.
*603 Francis M. Miller, Miami, for appellant.
George Schwartz, Miami Beach, for appellee.
THOMAS, Justice.
The appellee was successful in a suit to obtain a decree annulling his marriage to the appellant on the ground that the contract was void "ab initio by reason of the defendant's fraud and failure to consummate" it. The fraud, so it was alleged, consisted of the defendant's representations prior to the marriage that she desired to bear children, representations which, it was charged, were "not true thoughts."
These averments were put in issue by the answer, and the chancellor appointed a master, who heard the testimony and reported it to the court, with a recommendation that the plaintiff be awarded a decree.
It seems fitting at the outset to give a condensation of the master's comments on the issues and the testimony as we gain them from the report, which he obviously prepared with great care.
He recognized that the prayer for relief was based solely upon the alleged fraud on the part of the wife and her unwillingness to consummate the marriage. Although, upon casual consideration, he thought the testimony of the plaintiff that the parties "had lived and slept together for a considerable period of time subsequent to their marriage without a semblance of cohabitation" unbelievable, and later observed that it was "so contrary to human experience as to tax * * * credulity," he finally decided it might have been that her "refusal to cohabit consisted of an abstention from fruitful coition either by total abstinence from intercourse itself (which is improbable) or by resort to a complete blockade of the road to procreation by contraceptive barriers." He remarked that in his attempt to reconcile the testimony of the parties, the latter solution was more probable and was "adopted by the Master, rather than to throw out the testimony of the plaintiff on this subject as wholly incredible and contrary to nature and experience * *." Thus was injected into the case gratuitously the question of the use of any contraceptive agency.
As we analyze his findings on this pivotal point in the controversy  the consummation of the marriage  we understand the master to have decided that there was in fact sexual intercourse between the parties, but it could not have amounted to consummation because of the use of contraceptives. So much for the first phase of the dispute.
The second phase of the suit relates to the fraud said to have been practiced on the plaintiff-husband by the defendant-wife. The master digested the testimony about the premarital plans of the parties to rear children, purchase a home suitable for themselves and such family as they anticipated, the eventual refusal of the wife to conceive or bear children, and her admission after the marriage that she had entered into it only for the purpose of security and companionship. The master found that she had been guilty of fraud.
As we have said, the primary point involved, and the one which should be first determined, is the consummation of the marriage, for it is established law that one who has become a party to that ceremony by fraud of the other party may secure annulment if the marriage has not been completed by sexual intercourse. Cooper v. Cooper, 120 Fla. 607, 163 So. 35. The parties in their briefs agreed upon that rule, the appellee stating: "It is well settled that a party who has been a victim of a marriage ceremony procured by fraud and deception of the other party, and where such marriage has not been consummated by cohabitation, may maintain suit and procure a decree of annulment of such marriage." This statement, except the italics which *604 appellee supplied, is taken verbatim from Cooper v. Cooper, supra.
It may be stated, then, that counsel are agreed that the lack of consummation is a prerequisite to the annulment of a marriage on the ground of fraud, and we now turn to the testimony to determine whether the master clearly erred in his conclusion that there was no effective or true consummation because artificial means were used to defeat conception.
We have read all the testimony in the case and have been unable to find any predicate in it for such a finding. In only two places in the record have we seen the subject mentioned. The husband was asked: "There was no discussion of contraceptives?" and answered: "No, sir." The only other instance was when the wife, describing the second night of their honeymoon, said their sexual relations were normal and to the question, "Were any contraceptives used?" replied, "No."
There is no need for our entering a discussion of the question whether a marriage contract may be sealed where such a preventive agency is used, for the simple reason that there is nothing in the testimony in this case that warrants it. Appellee himself does not question the absence of such proof, for he says in his brief: "The testimony clearly indicates that at no time were there any contraceptives involved in the instant case." From the very nature of the intimate relationship there is small likelihood that such a fact could be established by anyone other than the man or the wife, and certainly where both of them deny that any such method was employed, this feature should be immediately eliminated.
We must then advert to the testimony of the parties themselves with reference to what actually occurred.
The man testified unequivocally that his wife never, during the several weeks that they lived together and actually slept together, submitted to sexual intercourse. Just as positively the wife stated that she had indulged in the practice repeatedly and, indeed, had never refused. To emphasize her statement in this respect, in reply to a question whether on one occasion they had lived as husband and wife, she said: "Yes, I swear by God, by my dead father and mother and by our Torah that I am telling the truth, and I want my husband to swear the same way." Of course it amounts almost to frustration when the only two parties who have knowledge of an affair give diametrically opposed accounts of what occured, as was done in this case, but it was the master's prerogative to choose the one he believed more likely to have told the truth, ever bearing in mind that, after all, it was the appellee's burden to prove the negative fact of absence of consummation.
We have the opinion that good cause was shown the chancellor to set aside that part of the master's report with reference to the use of contraceptives, Harmon v. Harmon, Fla., 40 So.2d 209, the master having clearly erred in introducing this into the case where there was no basis for it either in the pleadings or the evidence, and that the cause should be re-referred to the master to determine on the testimony, ignoring the matter of contraceptives whether the marriage was consummated. In making his election he will be aided by what he observed at the time the inconsistent stories were related from the witness stand, an advantage which was not available to the chancellor and is not to us. If he decides that consummation was not accomplished, then he can reexamine the question whether the appellee proved the appellant purposely induced him to marry her, pretending that she wished to enter into the relationship in order to produce a family while actually entertaining the intention not to do that but only to gain companionship and security, or whether she merely changed her mind.
If the master decides that there was, in truth, a consummation, the question of the use of contraceptives being eliminated, and the chancellor concurs, then there is no need to explore the other feature, for if there was sexual intercourse, the production of children would be left to nature, and any intent the woman entertained not to bear would fade into insignificance.
When the matter is again entertained by the chancellor on final hearing, after the *605 master has filed a further report in accordance with the views expressed in this opinion, the appellant should be given the opportunity of presenting any claims she may have to the money found by the master to have been paid by her on the purchase price of the property conveyed to the appellee.
The final decree is 
Reversed.
ADAMS, C.J., and TERRELL and ROBERTS, JJ., concur.