415 So.2d 88 (1982)
H. Jerry JARZEM a/K/a Jerry Jay, Appellant,
v.
Wilma R. BIERHAUS, a/K/a Wilma R. Bierhaus Jarzem, Appellee.
No. 81-630.
District Court of Appeal of Florida, Fourth District.
June 9, 1982.
Rehearing Denied July 9, 1982.
Harry G. Carratt of Morgan, Carratt & O'Connor, P.A., Fort Lauderdale, for appellant.
Shelby D. Wallis, Pompano Beach, for appellee.
DOWNEY, Judge.
Appellant, H. Jerry Jarzem, seeks reversal of a final judgment of dissolution of marriage, which awarded certain property to the wife.
The husband, an impecunious 65 year old dancing instructor,[1] married the wife, a 75 *89 year old wealthy widow, in April, 1979. The parties met when the wife undertook dancing lessons at the husband's studio. Thereafter, they saw each other socially for a period of several years, during which time the husband discussed his insecure financial situation with the wife. When they decided to get married the wife gave him a home she owned in Boca Raton so that he would feel more secure. During this premarital period the husband advised her that he was impotent and unable to engage in sexual intercourse. She testified that, regardless of this disclosure, she was willing to enter into the marriage. The wife further testified that, while they never did have any sexual relations, she had a happy marriage and that he was always very pleasant and affectionate toward her. Apparently, the wife would have had no real complaint had she not learned in November, 1979, that the husband was engaging in sexual relations with another woman at the dance studio. Although the husband denied it, the manager of the studio testified that she saw the husband actually engaging in sexual intercourse with one of the studio's patrons. That blew it, as they say, with the wife and she proceeded to institute this dissolution proceeding.
As indicated above, the wife conveyed the home in Boca Raton to the husband immediately prior to the marriage on April 19, 1979. During the ensuing month the husband prevailed upon the wife to convey to him an undivided one-half interest in the condominium in which they were residing. She also promised to, and did, give him $100,000 for his studio business and for some reason gave him a sixty-day note to evidence her promise. The other substantial property given to the husband was approximately 900 shares of stock in several corporations. The shares were delivered to him unendorsed; however, the wife signed a separate paper to acknowledge that she was transferring the shares to the husband. At trial the wife testified that she had no intention of making a gift of this stock to him, and the shares were furnished to him for loan collateral purposes only.
On the same day that the deed to the undivided one-half interest in the condominium and the $100,000 note were executed, the parties signed a post nuptial agreement authorizing each of them to dispose of his separate properties as if he were unmarried and agreeing that, upon termination of the marriage, neither party should have any claim on the property of the other.
The final judgment found that the marriage
"was in fact not a marriage under the laws of the state, either in fact or spirit, having been, on the one hand, never consummated by cohabitation, and on the other hand, conceived, designed and initiated by the Respondent, not because of any deep-rooted love or abiding affection for the Petitioner, but obviously to perpetrate a fraud upon the Petitioner. With no intention of ever performing any of the marital duties incumbent upon him, Respondent secured in his own name certain real property of the Petitioner and other tangible assets of considerable value belonging to Petitioner. Further, Respondent obtained the security of Petitioner's steady and unending income together with all the comforts of home without any expense to Respondent."
Furthermore, the court specifically found the husband fraudulently induced the wife to convey the Boca Raton home to him prior to the marriage. As regards the condominium, that was conveyed to both husband and wife simply to create an estate by the entireties, the court decided. Additionally, the trial judge found the husband induced the wife to give possession of the unendorsed stock certificates to him, but that she did not intend to make a gift of the certificates.
As a result of these findings the trial court held the conveyance of the Boca Raton home null and void and directed the husband to convey it to the wife. The wife was given the husband's one-half interest in the condominium as a special equity and the husband was ordered to return the stock *90 certificates she had delivered to him, together with the promissory note for $100,000. The husband was allowed to keep the $100,000, which the wife had given to him for his business.
Appellant presents four points on appeal, of which only two have sufficient merit to warrant discussion. The first and main point attacks the finding that the husband was guilty of fraud in entering into the marriage and the court's action in awarding the various properties to the wife.
As to this first point, we believe the record supports the trial judge's findings of fact and conclusions of law. We recognize that, if the wife's claim for annulment or divorce had been based upon the fact that the husband was impotent, it would have been unavailing if she had knowledge of such a fact before the marriage. However, we have an entirely different scenario in this case. Here, we have a situation in which a wealthy widow becomes interested in a man ten years her junior. After she has acquired this interest and they begin to consider marriage he advises her that he is impotent and is unable to engage in sexual intercourse. At this point in their relationship, all things considered, she is willing to marry him anyway for loving affection and companionship. However, he wants to marry her only to acquire some of her property and feather his nest. He does not want to fulfill one of the obligations of marriage by having sexual relations with her. So he deludes her into believing that he is incapable of intercourse but loves her enough to marry her anyway. Surely this woman would not have married him had she known that he simply wanted to marry her for her money without fulfilling all of the obligations of the marital state. The trial judge found that this entire charade constituted a fraud upon the wife, which infected all of the property transfers and justified the court in returning the various properties to the wife. See, Cooper v. Cooper, 120 Fla. 607, 163 So. 35 (1935); Stone v. Stone, 159 Fla. 624, 32 So.2d 278 (1947).
In appellant's second point it is contended that the trial court erred in refusing to grant a continuance of the trial after having granted the petition of Alfred and Maxine Borah to intervene just a few days prior to the trial date. It appears that the husband contracted to sell the Boca Raton real estate to the Borahs. Thus, just prior to trial, the trial court granted their petition to intervene. Whereupon, the husband moved to continue the trial, alleging the case was not at issue because the Borahs had not filed any pleadings as of the trial date. The continuance was denied. The Borahs were given notice of the trial, but did not appear and participate. Although the final judgment nullifies their contract, the Borahs have not seen fit to attack that action on appeal. Under these circumstances, we doubt that the husband has standing to complain of the denial of the motion for continuance, since denial of that motion could only adversely affect the Borahs. See, King v. Brown, 55 So.2d 187 (Fla. 1954); In re Estate of Rose, 165 So.2d 226 (Fla. 3d DCA 1964).
In view of the foregoing, the judgment appealed from is affirmed.
AFFIRMED.
ANSTEAD and DELL, JJ., concur.
NOTES
[1] This case is reminiscent of other cases where lonely widows of advanced age were taken in by dancing instructors. See, e.g., Clark v. Roberto's, Inc., 320 So.2d 870 (Fla. 4th DCA 1975); Michael's Sch. of Dance, L & C, Inc. v. Broward Nat. Bank, 320 So.2d 413 (Fla. 4th DCA 1975); Vokes v. Arthur Murray, Inc., 212 So.2d 906 (Fla. 2d DCA 1968).